UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THERESA LEE CHESTER,                        Case No. 11-15353

               Plaintiff,                   Marianne O. Battani
v.                                          United States District Judge

COMMISSIONER OF SOCIAL SECURITY,            Michael Hluchaniuk
                                            United States Magistrate Judge

               Defendant.
_____/

## REPORT AND RECOMMENDATION
## CROSS MOTIONS FOR SUMMARY JUDGMENT (Dkt. 11, 15)

## I.    PROCEDURAL HISTORY

### A.    Proceedings in this Court

On December 6, 2011, plaintiff Theresa Lee Chester filed the instant suit

seeking judicial review of the Commissioner's unfavorable decision disallowing

benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1

(b)(3), District Judge Marianne O. Battani referred this matter to the undersigned

for the purpose of reviewing the Commissioner's decision denying plaintiff's claim

for a period of disability and disability insurance benefits.  (Dkt. 2).  This matter is

before the Court on cross-motions for summary judgment.  (Dkt. 11, 15).

### B.    Administrative Proceedings

Plaintiff filed the instant claim for disability insurance benefits on October

29, 2008, alleging that she was disabled on January 1, 2008.  (Dkt. 7-5, Pg ID 119-

1

22).  The claim was initially disapproved by the state agency responsible for making disability determinations on behalf of the Commissioner on December 23, 2008.  (Dkt. 7-3, Pg ID 69).  Plaintiff requested a hearing and on July 19, 2010, plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Rebecca LaRiccia, who considered the case *de novo*.  (Dkt. 7-2, Pg ID 42-67).  In a decision dated October 25, 2010, the ALJ found that plaintiff was not disabled. (Dkt. 7-2, Pg ID 31-38).  Plaintiff requested a review of that decision, and the ALJ's decision became the final decision of the Commissioner when, after review of additional exhibits (Dkt. 7-2, Pg ID 24-26),[1] the Appeals Council, on October 21, 2011, denied plaintiff's request for review.  (Dkt. 7-2, PG ID 21-25); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED** in part, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner

---

[1]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

be **REVERSED**, and that this matter be **REMANDED** for further review and investigation.

## II.     FACTUAL BACKGROUND

### A.     ALJ Findings

At the time of the hearing, plaintiff was 52 years old.  (Dkt. 7-2, Pg ID 47). Plaintiff's relevant work history included work primarily as a school bus driver, as well as work as an assembler, cashier, receptionist and stacker.  (Dkt. 7-6, Pg ID 197).  In denying plaintiff's claims, defendant Commissioner considered fibromyalgia, gastroesophageal reflux disease, irritable bowel syndrome, anemia, and hypoglycemia as possible bases of disability.  (Dkt. 7-2, Pg ID 37).

The ALJ applied the five-step disability analysis to plaintiff's claims and found at step one that plaintiff had not engaged in substantial gainful activity since January 8, 2008.  (Dkt. 7-2, Pg ID 36).  At step two, the ALJ found that there are no medical signs or symptoms to substantiate the existence of a severe medically determinable impairment.  (Dkt. 7-2, Pg ID 36-38).  A person who does not have a severe impairment will not be found "disabled."  20 C.F.R. § 404.1520(c).  The ALJ concluded, therefore, that plaintiff was not disabled as defined by the Social Security Act.  (Dkt. 7-2, Pg ID 38).

### B.     Plaintiff's Claims of Error

Plaintiff claims that the record is replete with evidence that she suffers from

the severe impairment of fibromyalgia and that the ALJ erred in discounting the

opinions of her treating and consulting physicians and finding that she was not

disabled at step two of the sequential analysis.[2]  The record contains plaintiff's

treating physicians analysis of plaintiff's symptoms and conditions, and findings of

11 pressure points, and a consistent diagnosis of fibromyalgia since 1994.

Dr. R. J. Martocci, a neurologist, reported on May 23, 1994 that he

examined plaintiff for complaints of chronic right-sided weakness, worsening this

past month, with ataxia, suspicious pins and needles and numbness on her right

side.  (Dkt. 7-7, Pg ID 260-62).  Dr. Martocci noted a normal neurological

examination with no objective evidence of any neurological deficit and that

plaintiff was in "no acute distress," and that plaintiff's multiple subjective

complaints may reflect a fibromyalgia or myofascial-type syndrome, and that "[b]y

description, she may qualify for such medical labeling."  *Id.*

Plaintiff saw Dr. Peter Fragatos, a neurologist, in September 1994 for

complaints of pain to the right paracervical area with radiation over the right

shoulder and dysesthesia and numbness along with an aching type of pain in both

lower extremities.  (Dkt. 7-7, Pg ID 245).  Plaintiff underwent a cervical facet

---

[2]Although the ALJ also found that plaintiff's claimed impairments of
gastroesophageal reflux disease, irritable bowel syndrome, anemia, and
hypoglycemia were not "severe," Plaintiff does not contest the ALJ's findings as to
those alleged impairments.  (Dkt. 11).  Therefore, the ALJ's findings as to those
claimed impairments is affirmed.

block bilaterally, her C7 facet and lateral canal were also injected with DepoMedrol and Xylocaine, and she was scheduled for physical therapy. *Id.*

Plaintiff's treatment records with the Clarkston Medical Group from January 2007 through July 2010 repeatedly note plaintiff's persistent complaints of pain, consistently reference a diagnosis of fibromyalgia, provide prescriptions for Flexeril as well as for Valium, Lyrica, Neurontin, Ultram, and Prozac at different times during that time period, and opine that plaintiff could not return to work in 2008 because of her pain. (Dkt. 7-7, Pg ID 220-33, 249-56). On July 8, 2010, plaintiff's treating physician, Paul Haduck, D.O., completed a Medical Statement Regarding Fibromyalgia for Social Security Disability Claim in which he noted that plaintiff had a history of widespread pain for three or more months, pain in 11 or more pressure points, stiffness, irritable bowel syndrom, tension headaches, paresthesias, sensation of swollen glands, sleep disturbance, and chronic fatigue and memory loss, but did not have the inability to ambulate effectively. (Dkt. 7-7, Pg ID 242-43). Dr. Haduck opined that plaintiff could work two hours per day, stand for one hour at a time and for two hours in a workday, sit 15 minutes at a time and one hour in a workday, lift five pounds, and occasionally bend, stoop and raise her arms over shoulder level. *Id.*

In early February 2008, Dr. Renny Abraham ordered an MRI for plaintiff to rule out multiple sclerosis because of plaintiff's complaints of vision changes.

(Dkt. 7-7, Pg ID 209).  The MRI revealed several areas of signal abnormality in the white matter of both frontal lobes.  *Id.*  Dr. Abraham instructed plaintiff to see a neurologist regarding the MRI results.  (Dkt. 7-7, Pg ID 218).

Lee Marshall, D.O., conducted a neurological consultation of plaintiff in February 2008.  (Dkt. 7-7, Pg ID 201-03).   He noted that plaintiff was diagnosed with fibromyalgia several years ago, that she has a history of remote thoracic outlet syndrome and that plaintiff described numerous tenderpoints on examination.  *Id.* Dr. Marshall scheduled plaintiff for a lumbar puncture for inflammatory demyelinating protocol and an MRI of her cervical spine.  *Id.*  In a follow-up exam in March 2008, Dr. Marshall noted a stable neurologic examination and that plaintiff was doing much better, complained of no headaches and her sleep was improved, but also noted nonspecific hyper-intense 12-weighted lesions of uncertain etiology identified on a MRI.  (Dkt. 7-7, Pg ID 200-01).  The MRI of plaintiff's cervical spine was normal.  (Dkt. 7-7, Pg ID 214).

Plaintiff argues that the ALJ failed to apply, or even refer to, Social Security Ruling ("SSR") 99-2p, which addresses evaluating cases involving chronic fatigue syndrome.   Plaintiff further argues that the ALJ fails to adequately address the record evidence supporting her claim of disability, including two treating doctors and two consulting doctors who diagnosed plaintiff with fibromyalgia, and that the ALJ failed to give sufficient weight to the opinions of those treating physicians.

6

According to the plaintiff, the ALJ erred in failing to proceed past Step Two in the sequential analysis because plaintiff's burden of proof at this step is *de minimus* and "an impairment can be considered *not* severe *only* if it is a slight abnormality that *minimally* affects work ability regardless of age, education, and experience." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (emphasis added).  Plaintiff contends there is substantial medical evidence of fibromyalgia in the record and thus this is not a "totally groundless" claim.

In fact, plaintiff argues, the preponderance of the medical evidence in this case establishes that she is disabled.  Her treating doctor confirmed that she cannot work and her own testimony establishes that her pain, fatigue and need to take a nap during the day precludes substantial gainful employment.  Moreover, plaintiff is 50 years old, had only performed unskilled and semi-skilled work in the past and she did not graduate from high school.  Therefore, under the GRID sections 201.10 or 201.14, plaintiff is "disabled" even if Dr. Haduck's report is only given partial weight and plaintiff is found to be able to do "sedentary" work.

### C.   The Commissioner's Motion for Summary Judgment

The Commissioner contends that the ALJ's decision is supported by substantial evidence.  The Commissioner argues that it is plaintiff's burden to show that a medically determinable impairment exists, and that plaintiff has simply failed to meet her burden here.  Plaintiff's physicians did not base any diagnosis of

7

fibromyalgia on any objective signs or laboratory results, but instead only on plaintiff's self-reported subjective complaints.  Although plaintiff relies extensively on SSR 99-2p, that ruling addresses chronic fatigue syndrome (which plaintiff does not claim) and not fibromyalgia, and thus is inapplicable to the ALJ's analysis here.

In addition, the ALJ properly evaluated plaintiff's physician's opinions and reports.  Dr. Martocci fails to support plaintiff's claim of a medically determinable impairment because he wrote that plaintiff had no abnormal findings and that his conclusion was based on symptoms alone.  Further, the numerous references to fibromyalgia in the record were taken from past medical history, or merely repeated, but were not based on any objective signs.  Moreover, Plaintiff's reliance on Dr. Haduck's "checkbox" disability form is inadequate to substantiate a "severe" impairment because the form only reports symptoms or subjective reports of pain and fails to identify any objective signs or laboratory findings supporting a diagnosis of fibromyalgia.

Finally, the Commissioner contends that if remand is deemed appropriate, it should only be for further consideration and not an award of benefits because plaintiff would not be found disabled even if she were limited to sedentary work. The vocational expert testified at the hearing that plaintiff could perform her past relevant work as a receptionist and thus plaintiff would be found not disabled at

step four of the sequential analysis. Moreover, because receptionist work was semi-skilled, plaintiff might have transferrable skills that would preclude use of the Grid at step five. Thus, the Commissioner reasons, if remand is required, the Commissioner should be allowed to determine plaintiff's residual functional capacity and determine whether she could return to her past work as a receptionist, or other work that uses any transferrable skills she may have, or any other non-sedentary work that exists in the national economy.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this

statute is limited in that the court "must affirm the Commissioner's conclusions

absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the

record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant." *Rogers v.*

*Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.*

*Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may ... consider the credibility of a claimant

when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502

F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the

claimant are to be given great weight, particularly since the ALJ is charged with

observing the claimant's demeanor and credibility.") (quotation marks omitted);

*Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence.").  "However, the ALJ is not free to make

10

credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of*

11

*Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

## B.  Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without further
> analysis.
>
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

### C.    Analysis

The ALJ found that plaintiff did not have a severe impairment at step two of the sequential analysis and thus did not proceed further with the disability analysis. A severe impairment is defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment "can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n.2 (6th Cir. 2007) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)).  In the Sixth Circuit, step two of the sequential disability process is considered a "de minimus hurdle" designed to subject to dismissal only those claims that are "totally groundless" from a medical standpoint. *Id.*  As the Sixth Circuit has recognized, "this lenient interpretation of the severity requirement in part represents the courts' response to the Secretary's questionable practice in the early 1980s of using the step two regulation to deny meritorious claims without proper vocational analysis." *Long v. Apfel*, 1 Fed. Appx. 326, 331 (6th Cir. 2001)

(citation omitted).

An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security.  Most importantly, the ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians.  SSR 96-2p; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir 2004).  A presumption exists that the opinion of a treating physician is entitled to greater deference.  *Id.; Rogers*, 486 F.3d at 243.  If that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in [the] case record."  *Wilson*, 378 F.3d at 544.  If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so. SSR 96-2p.  The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Id.*  If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking "even where the conclusion of the ALJ may be justified based upon the record."  *Rogers*, 486 F.3d at 243 (citation omitted).

16

Further, an "ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence." *Meece v. Barnhart*, 192 Fed. Appx. 456, 465 (6th Cir. 2006) (citation omitted).  When evaluating treating physician evidence, the ALJ must also consider under some circumstances, contacting the treating source for clarification:

> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner *and the adjudicator cannot ascertain the basis of the opinion from the case record*, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.

SSR 96-5p (emphasis added).  Social security proceedings–unlike judicial ones–are inquisitorial, not adversarial.  *See Sims v. Apfel*, 530 U.S. 103, 110-11 (2000).  Consequently, an ALJ has a "duty to investigate the facts and develop the arguments both for and against granting benefits." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 400-01 (1971)).  The Sixth Circuit has also long recognized an ALJ's obligation to fully develop the record.  *See Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392 (6th Cir. 2010) (citations omitted).  An ALJ has a duty to develop the record even where, as here, the plaintiff was represented by counsel. *See Thompson v. Sullivan*, 987 F.2d 1482, 1492 (10th Cir. 1993); *see also* 20 C.F.R. § 404.1592(e) (an ALJ must recontact the claimant's medical sources for

additional information when the record evidence is inadequate to determine

whether the claimant is disabled).

Before discussing the relevant medical evidence, a brief discussion about the

nature of fibromyalgia is necessary. Courts have recognized that fibromyalgia "is

an unusual impairment in that its symptoms are often not supportable by objective

medical evidence." *Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx. 801, 806 (6th

Cir. 2008). Fibromyalgia sufferers often exhibit "normal muscle strength and

neurological reactions and have a full range of motion." *Rogers*, 486 F.3d at 244.

With respect to diagnosing or assessing the severity of fibromyalgia, objective

medical tests are often of "little relevance" because "unlike medical conditions that

can be confirmed by objective testing, fibromyalgia patients present no objectively

alarming signs." *Id.* at 243. Fibromyalgia is diagnosed and assessed by testing "a

series of focal points for tenderness" and ruling out other possible conditions

through objective medical and clinical measures. *Id.* at 244.

Plaintiff's treatment records from 1994 and 2007 through 2010 repeatedly

note plaintiff's complaints of aches and pains and numbness, and consistently

diagnose fibromyalgia and opine that plaintiff could not return to work after

January 2008. (Dkt. 7-7, Pg ID 220-33, 245, 249-56, 260-62). Plaintiff was

treated over a long period of time and was prescribed several medications,

including Flexeril, Valium, Ultram, Lyrica, Prozac and Neurontin. *Id.* Further,

plaintiff's long-time treating physician has opined that plaintiff had a history of widespread pain for three or more months, pain in 11 or more pressure points, stiffness, irritable bowel syndrome, tension headaches, paresthesias, sensation of swollen glands, sleep disturbance, chronic fatigue and memory loss, but did not have the inability to ambulate effectively. (Dkt. 7-7, Pg ID 242-43). Tellingly, there is no medical evidence in the record to the contrary.[3] The ALJ simply rejected plaintiff's claimed limitation based on the lack of "objectively verifiable" medical evidence, and also stated that plaintiff's "use of medications does not suggest the presence of fibromyalgia" because "[o]ne might anticipate the use of stronger, more effective painkillers after an alleged three-year bout with disabling fibromyalgia pain." (Dkt. 7-2, Pg ID 37).

Given the extent of treatment and number and type of medications she was taking, plaintiff's treating physicians should have been asked to explain their opinions regarding plaintiff's functional limitations during the relevant time period. Without such information, the ALJ did not have the full picture and could not fully assess plaintiff's credibility either, which requires the ALJ to consider, among other factors, "the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms."

---

[3]The undersigned notes that the initial disability determination was made by a single decisionmaker and not a doctor. (Dkt 7-3, Pg ID 69).

SSR 96-7p.[4]

The undersigned is also concerned that the ALJ did not fully assess plaintiff's fibromyalgia under standards required by the Sixth Circuit given that an analysis of plaintiff's subjective pain complaints is critical and that a purported "lack of objective evidence" is not a proper basis to reject a treating physician's opinion when evaluating fibromyalgia. The ALJ rejected plaintiff's claimed limitations based on an alleged lack of foundation in "objective medical evidence." This course has been repeatedly rejected in cases addressing the assessment of fibromyalgia. The Sixth Circuit noted that "in light of the unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia, opinions that focus solely upon objective evidence are not particularly relevant." *Rogers*,

---

[4]The undersigned finds, however, that plaintiff's claim that the ALJ erred by not analyzing her claim under SSR 99-2p, which applies to the evaluation and assessment of chronic fatigue syndrome ("CFS"), to be without merit. Plaintiff has never been diagnosed with CFS and has been consistently diagnosed with fibromyalgia. As expressly set forth in SSR 99-2p, while "[t]here is a considerable overlap of symptoms between CFS and [f]ibromyalgia," CFS and fibromyalgia are two entirely separate syndromes. SSR 99-2p n.3; *see also Beveridge v. Comm'r of Soc. Sec.*, 2011 WL 4407564, at *5 (E.D. Mich. July 18, 2011), *adopted by* 2011 WL 4406334 (E.D. Mich. Sept. 22, 2011). As in *Beveridge*, the record in this case is replete with evidence that plaintiff suffered from fibromyalgia and that her treating doctors treated her for fibromyalgia, but no mention whatsoever of CFS or the diagnosis or treatment of CFS. Thus, the ALJ did not err by failing to analyze plaintiff's claim under SSR 99-2p. *See Beveridge*, 2011 WL 4407564, at *5 (noting that "the mere mention that plaintiff suffered from 'chronic fatigue' in her medical records does not support her claim that she in fact had CFS or was diagnosed with CFS").

486, F.3d at 245; *see also Canfield v. Comm'r of Soc. Sec.*, 2002 WL 31235758, at *1 (E.D. Mich. Sept. 13, 2002) (discussing how it is "nonsensical to discount a fibromyalgia patient's subjective complaints on the grounds that objective findings are lacking").  Thus, this is another reason the ALJ should have contacted plaintiff's treating physicians to obtain their opinions regarding her functional limitations.

Therefore, after review of the record, the undersigned concludes that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is not supported by substantial evidence, justifying remand and investigation consistent with this Report and Recommendation.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED** in part, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further review and investigation consistent with this report and recommendation.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 25, 2013                    s/Michael Hluchaniuk
                                           Michael Hluchaniuk
                                           United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 25, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Phillip R. Fabrizio, Laura Anne Sagolla, AUSA, and the Commissioner of Social Security</u>.

<u>s/Tammy Hallwood          </u>
Case Manager
(810) 341-7850
<u>tammy_hallwood@mied.uscourts.gov</u>